oral arguments between 20 minutes each year by Andrew Mendez and 20 minutes by Mr. Avellano Andrew Avellano, on behalf of Appellant Raynard Crowe, I would like to reserve two minutes for rebuttal. I'd like to limit my argument to about five minutes. We have some law students from the University of Michigan. I'd like to cede my time to them. That's fine, thank you. A couple of housekeeping issues. Upon further review, Mr. Crowe would like to adopt the third argument that Mr. Wingate makes regarding the mandatory minimum sentence under 924C1C for a prior conviction of a 924C vis-à-vis Elaine. We will be filing a motion for leave requesting... Sorry, you want to adopt an argument or do you want to add an issue? Just adopt that argument. Right, just adopt that argument. Also, I won't be addressing my second argument either upon review of the Bowers case that Judge Moore authored. I don't think that there's any profit in going through that. We're not going to concede the issue, but the court has already ruled on that issue. Which leaves us with our first issue, which is essentially what was in substance a brutal violation. The defendant speaks through his counsel, and in this instance, Counsel for Wingate stipulated essentially during closing argument that Wingate was involved in this conspiracy to rob the Ferndale Pharmacy. There was no limiting instruction given by the court to the jury that such a concession, such a stipulation, shouldn't be held against the co-defendant. Why would it? Why would an admission by a co-defendant necessarily involve the other co-defendant? Because it's a conspiracy case in this situation. So in the conspiracy to commit robbery of the pharmacy. I'm involved in the conspiracy. How does that necessarily show that the other defendant, I mean, you can have conspiracy of multiple people, right? It doesn't mean it's necessarily Crow that Wingate says, yes, I admit that I'm in a conspiracy. It's my understanding he didn't even implicate Crow, did he? He did not use, the counsel did not use Crow's name, that is correct. The unnamed third party. I mean, it doesn't mean it's Crow, does it? Well, our position is that you have a jury, you have two defendants, there wasn't any mention of other co-defendants. There's no objection, there's no request for a curative instruction? There was not, no. And so we review for plain error? Yes, yes you would. However, unless the court decides that the filing of the motion to sever preserved the issue. And in this instance, and the government had argued that the only issue that was raised in the motion to sever was as it related to the bank robbery. And that's not accurate. The motion itself says specifically severance of counts and severance of defendants. Counsel for Crow mentioned how the conspiracy with the bank specifically was a problem, but then also stated that it was a problem as it related to bleed over into the pharmacy robbery. So I think that the issue was preserved for de novo review. If the court has no other questions. Thank you. Good morning, your honors, and may it please the court. My name is Melissa Salinas with the Federal Appellate Litigation Clinic out of the University of Michigan Law School. I'm counsel of record for this case, and I would like to cede my time to the students who will be arguing it. Fine, thank you. Good morning, your honors, and may it please the court. My name is Daniel Helinen for Appellant Alfred Wingate. I'd like to reserve two minutes of Mr. Wingate's total time for rebuttal. Fine. Thank you, your honors. Are you dividing issues, or how are we doing the argument? Yes, your honor. I'll be addressing Mr. Wingate's sentencing argument, and my colleague, Mr. Manning, will address his ineffective assistance claim. Very well. The district court committed plain error in this case when it violated the Sixth Amendment by sentencing Mr. Wingate on three counts of defamation. The defendant was found guilty of brandishing without a fact finding by the jury, as the government now concedes. This error was not harmless because there was conflicting evidence about whether Mr. Wingate brandished a weapon during the MediCap pharmacy robbery. I saw the video, and I saw the gun going back and forth on the counter, and you couldn't see who it was because I think he had a mask or a hat or something, so his face was concealed. But doesn't the video itself, isn't that conclusive evidence of brandishing? I mean, it's almost a classic definition of what brandishing is, isn't it? Isn't that enough? Your honor, there are two videos, one for the Citizens Bank robbery and one for the MediCap pharmacy robbery. And Mr. Wingate, because of the operation of the rule of lenity for the 924C consecutive sentences, can point to reasonable doubt in either of those cases. In the Citizens Bank robbery, which I believe is what your honor is referring to, in that case, there was no clear identification going with the video. But you're arguing brandishing. Yes, your honor. And brandishing, it is clear that the weapon's being brandished, is it not? The video does show some brandishing, your honor, but it's slightly blurry in the video, and it's not clear which of the two defendants is doing so. And we believe actually the MediCap pharmacy robbery presents the clearest case of reasonable doubt in this case because there's conflicting testimony between the two key witnesses for the government. Okay, but the issue of whether there was brandishing for sentencing purposes is what you're appealing. You're arguing that there is not evidence of brandishing. But, I mean, the video is, though, isn't it? Well, your honor, Mr. Wingate needs to show reasonable doubt as to whether there would have been a finding of brandishing. For the sentencing purposes? For the sentencing purposes, under United States v. MAC on harmless error review, because there was no finding about brandishing at the trial. You know, the evidence is key because there wasn't an objection. And so we're dealing here with plain error review. So what other evidence in the record existed to find beyond a reasonable doubt that he did, in fact, brandish the weapon? I mean, that's critical here, right? Yes, your honor. I mean, it's conceded that there was error in the jury instruction. And it's also clear there was no objection. So we move on to consideration of whether the error affected his substantial rights, right? Yes, your honor. In order to do that, it's critical that we look at what the evidence, in fact, was, right? Yes, your honor. And in count five of the indictment, the MediCap pharmacy robbery, there is evidence that Mr. Wingate did not brandish a weapon. Specifically, the testimony of Heather Cabot, who was the government's star witness in that case. She provided the identification of Mr. Wingate for the MediCap pharmacy robbery. And at page 1325 of the record, when the government asks her whether she saw Mr. Wingate with a weapon, she states that she did not see Mr. Wingate with a weapon. But were there other witnesses who said that they saw that he had a weapon, like his co-defendants or cohorts in the criminal activity? There are two key witnesses at the MediCap pharmacy robbery. Ms. Cabot and the other was Taylor Gielo, her colleague at the MediCap pharmacy. And Ms. Gielo did testify to brandishing, but she did not provide a critical identification of Mr. Wingate during the commission of the robbery. But he was convicted of commission of the robbery. Yes, that's right. So the jury found that he was there, and Gielo testifies that the person who was there brandished a firearm? Yes, Your Honor. She testifies there's two robbers and she testifies about brandishing. That both of them brandished? So Ms. Gielo is confused at various points in the record about the identifications of the robbers. She testifies to what she believes is Mr. Wingate's brandishing after she's been lying on the floor. One of the robbers pulls her up and takes her to the cash register. But at various points, at page 1258 in the record, page 1268, it's clear that because of the questioning and because of her recollections of the case, she's not completely clear about which defendant is doing what at various points in her testimony. So when that evidence is compared to Ms. Cabot's clear testimony that she saw Mr. Wingate, saw his face clearly enough to identify him, and also saw that he was not brandishing a weapon throughout the entirety of the robbery, that creates the reasonable doubt that's necessary for relief in this case on harmless error review. Ms. Cabot was also shown a surveillance video at page 1331 of the record where the government walked her through the recorded parts of the robbery, and that surveillance video did not change her testimony. She said that she did not see Mr. Wingate with a gun throughout the course of the robbery. So because of... So your point is that in order for the brandishing to remain as viable under plain error analysis, that we have to find that there was brandishing in each of the three robberies by Mr. Wingate. Is that right? Our position is that if there's reasonable doubt as to any one of the three, then under this court's case of United States v. Washington, the rule of lenity applies and the sentence, excuse me, the... Seven years as opposed to five years. You would get a two-year reduction in the sentence. That's right, Your Honor, and the reduction from seven years to five years would require that that specific sentence be ordered first in the 924C consecutive sentencing process. There may not... I don't know that there was evidence at this point from Ms. Cavett or not, but there was evidence that both of the assailants pointed guns at workers during the MediCap robbery, right? Yes, that's Ms. Gilo's testimony. But because of the reasonable doubt standard, the conflicting evidence from Ms. Cavett creates enough reasonable doubt about the brandishing. So it all hinges on... Is Ms. Cavett contrary or did she just not see? She was there for the entirety of the robbery, and she testifies that she did not see brandishing throughout the entire robbery. Well, that's a little different. It doesn't have to be throughout. It can be at any point. Yes, Your Honor. Your point was she didn't see it at any time. Yes, that's right. I see my time has expired if there are no further questions. Thank you, Your Honors. Good morning, Your Honors, and may it please the Court. My name is Rex Manning, and I will discuss Mr. Wingate's IAC claim. This Court has an opportunity to clarify two points of law with respect to cross-examination. The first is that cross-examination is as much about what a witness does not know as what a witness does know. And the second is that trial counsel can render ineffective assistance by failing to cross-examine a number of government witnesses when the government calls many witnesses and there is not a single star witness for all of the counts. Couldn't this be the attorney's trial strategy, and don't we need to have an evidentiary hearing in order to decide that? Obviously, in front of the district court. In other circumstances, it could, but here the court does not need to hold an evidentiary hearing to determine that this was not trial strategy based on the sheer number of witnesses that were not cross-examined. Yes, but, you know, it's really, I mean, as you sit through these kinds of robbery cases, it wouldn't be unreasonable for trial counsel to conclude that, in fact, these witnesses really were victims of robbery, that it would be counterproductive to cross-examine employees who are indeed the victims of a robbery. It just seems that this particular type of case lends itself well to the adoption of more than one potential strategy. What do you have to say about that? There are certainly different strategies that trial counsel could have adopted that would have been effective, but the strategy that was taken here was not reasonable under Strickland based on, if you look at the cross-examination of specific witnesses with respect to Mr. Crowe and then the failure to cross-examine with respect to Mr. Wingate. There were a few questions that were asked of specific witnesses on behalf of Mr. Crowe that demonstrated they could not identify Mr. Crowe, for example, with Ms. Guy and with Ms. Cavett. So the failure to cross-examine those witnesses and to demonstrate the same specifically with Ms. Guy, and this comes at record item number 194, page ID 1312. Ms. Guy testified that she saw three individuals in a white truck and another individual trying to throw a bag of narcotics into the truck. And on cross-examination for Mr. Crowe, Mr. Crowe's counsel asked a simple question that Ms. Guy could not identify Mr. Crowe as one of the men in the truck, and then Mr. Wingate's trial counsel asked no question of the same. Maybe that's because he had interviewed the witness and knew that the answer would not be favorable to the client. Based on what we know. There's no evidence one way or another, is there? The evidence suggests that because there was other testimony about Mr. Wingate having access to a red minivan, and there was no specific signposting within specific witnesses that would demonstrate that Mr. Wingate was in that minivan, even with the examination of Ms. Guy. And so it's possible that the jury could have inferred that Ms. Guy would have seen Mr. Wingate in the white truck, even though everything else suggests that Mr. Wingate was not there and the answer would have been no. That's a question that was very simple and could have been posed by trial counsel and was not. But we don't really know what the lawyer's reason was for not asking that question. It could be hypothetically what Judge Gibbons was saying. So normally we think of ineffective assistance of counsel claims as best raised through post-conviction proceeding, like 2255 here. And I'm really wondering why that isn't the answer for this case. This court recognized in the United States v. Pierce at page 833 that if parties adequately develop the record, then the court can review ineffective assistance on direct appeal. And here there's enough in the record for both of the reasons why there was ineffective assistance with the failure to suppress, because the failure to suppress meant the evidence came in at trial, and then trial counsel did cross-examine Ms. Cavett with respect to that. So we have enough on the unduly suggestive photo lineup. And then based on what we see from the cross-examination questions on behalf of Mr. Crow, there's also enough in the record for the court to review with respect to cross-examination and the failure to cross-examine 15 of the 25 government witnesses. So we can infer what trial strategy from the record? Not necessarily what trial strategy, Your Honor, but you can infer that whatever trial strategy there might have been, it was not reasonable under Strickland. Okay. I mean, he may not have had a trial strategy. That's probably the answer. But we really just don't know at this point. I mean, it really is the exception to the rule that we will rule on ineffective assistance claims on direct appeal. And we have done it on occasion, but it's very rare. And I'm also not sure that this is the appropriate case to do it. Your Honor, it would be appropriate because we have enough in the record based on the questions that were posed for Mr. Crow and the difference in verdicts from the jury. Mr. Crow was acquitted based on the MediCap robbery. Mr. Wingate was convicted. There was a difference in cross-examination throughout. And for these reasons, we would ask that the court reverse the remand. Thank you. Good morning. May it please the Court, Counsel. I'm Ken Shadwell, appearing on behalf of the United States this morning. I want to address Mr. Wingate's issues first. First of all, after the Matt case, the stacking of 924Cs does survive a lane unless an en banc court or the Supreme Court changes that rule. Secondly, I do agree that we had to show brandishing as to all three robberies, beyond a reasonable doubt, under the rule of lenity. And this is how we did that. Government Exhibit 8 is the bank surveillance video. At camera angle 2, 1230.52 p.m. to 1231.23 p.m., we see Mr. Wingate having a semi-automatic handgun in his left hand and pulling down his white mask with his right hand to try to cover up his beard just before he jumps the counter. And which robbery is this? This is the bank robbery. Bank, okay. Number one. We know that's Mr. Wingate partly because Mr. Loving had a bright red jacket on. And you can see that in the video at different camera angles, including the one I'm speaking of. So there's no question of brandishing in the bank robbery. There's also no question of brandishing in the Medicaid pharmacy robbery. Exhibit 30, there's a surveillance video. And at 1140.41 seconds to 49 seconds, Leroy Loving pulls out a handgun. That's brandishing number one. Then we see Mr. Wingate again, and this is important, with his left hand. At 1140.58 seconds, 50 seconds into the video, that's another way to track the time, you can see Mr. Wingate walking in very clearly, brandishing, again, a semi-automatic handgun. This time he doesn't have the mask that was bothering him in the first robbery. And the third robbery, Ferndale Pharmacy, Chitty Perlo said a gun was not only pointed but discharged. And he was wounded when it hit the floor. Michaud testified at 1645.48 to two different guns. In fact, two different guns were recovered by police out the back door. Judge Tarnall does not allow guns in his courtroom just as a matter of policy, so we admitted Exhibits 38 and 39 as photos of those guns. Did anything in the Ferndale robbery tie Wingate to the guns? There was testimony that both robbers brandished guns. There was not testimony to say that one robber had two guns. So there was testimony that, and we didn't have a video inside that pharmacy. For these convictions, did Wingate have to personally brandish? I don't believe so. He was charged with aiding and abetting. So if anybody brandished and he aided and abetted in that, he could be convicted? Absolutely. But are you relying on the aiding and abetting as opposed to Wingate having brandished the gun himself? I would make the alternative argument that we didn't have to prove it, but we did prove it. I want to ask something that perhaps is more an expression of dismay than a question, so don't waste too much time responding to it, but just note it. I don't understand how defense counsel, the government, and the court cannot charge on something as basic as brandishing, which comes up all the time. I mean, were you all asleep? We were asleep at sentencing, Your Honor. We were not asleep at trial, though, because the Elaine decision came after trial and before sentencing, as this case worked out. So we were asleep at sentencing, but not at trial. Well, but Elaine wasn't necessary to know you had to charge on brandishing. You had to charge on brandishing a long, long time ago. I mean, you had to charge on brandishing before I left the district court in 2002. We did charge brandishing, by the way. The indictment alleges brandishing. No, no, no, the jury instructions. That's what I'm referring to. Okay. You had to instruct the jury. Right. Right, if we needed a jury finding, and I guess it wasn't our understanding until after Elaine that for sure we needed that jury finding. Well, that raises even more questions. Yeah, maybe. I will not go there, but I mean. Fortunately, this court has held that plain error review can occur, again, in the Matt case. Judge Moore was on that panel. And we have far more evidence than the Matt case had. The Matt case said the victim testified that a gun was put on her. We got video, video, and then multiple victims got the guns themselves for the third robbery. So we proved beyond a reasonable doubt. Moving on to ineffective assistance of counsel. The first complaint is there's not enough cross-examination, and 15 witnesses are listed. And I can go through those 15 witnesses in one minute flat, if you'll permit me here. Wingate decided to admit the obvious. He got caught in the act of robbing Ferndale Pharmacy. His counsel strategically decided we can't deny that and have any credibility on anything else. So Misho, Reed, Allen, Chidiprolu, Kudzo, Woolley, Simpson, Collette, Carroll, and McDonald are all Ferndale Pharmacy witnesses who weren't cross-examined or not very much by Wingate. That's 10 right there. The others who weren't cross-examined are Jonathan Atkins, an FBI agent who tracked down Crow in Arizona, did not implicate Wingate in anything. Spellman, who caught Crow with a bunch of money the day after the bank robbery, not realizing there was a bank robbery. Jeanne Breeze was a meter maid. All she said was there was a handicapped license plate on the van. Didn't identify the robbers who were coming out right in front of her. Carol Thompson, a bank teller, didn't identify Wingate. The only other witness that's really spent any time on is Lisa Guy. She's the one chasing the guy down the street with the bag, thinking it's out of her garage. And Mr. Crow's attorney got up and made a big show, and, well, you can't identify my client, can you? And he took a risk when he did that, because what if she said yes? On direct, she hadn't incriminated Crow, but he's pressing the limits. Mr. Wingate's counsel was a little smarter than that, decided not to ask the question, because who knows what she might say? She hadn't picked out Mr. Wingate. She hadn't hurt him. She told a story that everyone knew was true, that she chased this guy down the street, and we had the bag to prove it, the bag full of drugs, of guns, everything was there. Cell phones was there, and it was admitted into evidence in the case. So there were no errors in terms of not cross-examining that have been established. Isn't there a problem, the same question that we asked the other side, isn't there a problem that we don't really know what trial counsel's strategy is? That's true. And they may be able to find something out by getting information from trial counsel that he had no strategy at all, that he was totally inexperienced and didn't know what he was doing. Theoretically, that's theoretically possible. And then they'd have to show prejudice from not cross-examining. Absolutely. What about the lineup? On the photo array, the argument is that it was so obvious that Wingate was the only one with distinctive characteristics, there should have been a challenge to the photo array. Okay, it wasn't a good photo spread, obviously, right? But there were some good things about it. There were six African-American men of similar age, all bald, three of them had beards. None of them had glasses, by the way, and I'll come back to that in a second. On the beards, Wingate apparently had a very large, bushy beard, and the other two had very minor beards. Right, and you might even say it looked like Wingate's was colored in by a marker. It looked so bad. And it looks like Wingate is really darker than he is, and you have an exhibit to show you exactly kind of Wingate's darkness or not. I mean, shouldn't the photo array have been challenged and a motion to suppress me? You could say theoretically yes. It doesn't mean it was a mistake not to. What would you lose by challenging it? I guess you wouldn't lose anything. I just don't understand why competent counsel wouldn't challenge a dubious photo array. Right, and it's hard for me to explain for counsel standing here today. But what must be shown is that the verdict would have been different under Strickland in order for you to take action. Cavett is the one who was shown the photo array, and Cavett identifies him at trial, but the argument would be that she was influenced by the photo array. Right, but one of the times where counsel really did a great cross-examination was on Cavett. You could say he destroyed her. He pointed out all the problems that Your Honor has in her mind this morning about this photo lineup. She was taken down piece by piece by piece. Her testimony was also undercut by the fact there were two other victims in this pharmacy who did not identify Mr. Wingate. So the jury knew that. The jury saw the crappy photo lineup for themselves, Your Honor, but there was a lot of other evidence that the jury had, specifically three co-conspirators testified, two of whom having no prior criminal history, that Mr. Wingate was one of the robbers. That was very important testimony. Further, the video, which is Exhibit 30, is far more significant than first meets the eye, and I'd like to spend some of my time demonstrating why Exhibit 30 is a very important piece of evidence. Now it's not as good a video as the bank. The bank has eight different cameras. It's nice and clear when you click it. This thing you've got to watch all four at once. You've got to squint and try to watch this little part in the bottom right to find out what characteristics the jury had to compare with Mr. Wingate. But starting with the fact that he enters with a gun in his left hand, and it's a semi-automatic, that's pretty good for starters. Secondly, the mere fact he didn't have a mask helped identify as Mr. Wingate because you could tell in the first robber he was having a problem with that mask. He didn't like that mask. Additionally, we proved that Mr. Wingate normally wears glasses. You can see that at Exhibits 15 and 16, which we submitted after our brief. You can see Mr. Wingate wears glasses, and he wasn't able to wear those glasses, fooling with that white mask in the first bank robbery. But he did wear his glasses during the Medi-Cap pharmacy robbery. Now this is very difficult to see, and you have to watch the video over and over and over and over, and all you really see is kind of a shadow when he turns. You can sometimes see over his shoulder, sometimes he turns left, sometimes he turns right. Specifically, at 3 minutes 5 seconds to 3 minutes 7 seconds, if you play it over and over and over, you can see that shadow that Mr. Wingate is in fact wearing his glasses. You can also see that Mr. Wingate is bald. He's wearing a cheap baseball cap, one of those that you can kind of adjust in the back and has a hole, and when you see the back of it, you can see his head. You don't see any hair, so you can see that Mr. Wingate is in fact bald. You can also see that Mr. Wingate is relatively light-skinned African-American. You can see his body style and type and what kind of movements he makes. You can see how big the beard is. And the jury had all of these facts to compare to Mr. Wingate, who was sitting right next to them for 7 to 10 days. They could see his mannerism, whether or not he wore glasses, etc., etc. Further, the fact he was wearing a baseball cap is also what he wore in robbery number 3. We admitted a baseball cap that was recovered after robbery number 3, Government Exhibit 44, the page ID 1693, and it just happened to be black. I don't know if it was the same baseball cap or not, but after having problems with this mask, which you can see in the bank surveillance, he switches to no mask and a baseball cap, and he's now able to wear his glasses. So although this Exhibit 30 is not as clear, it's much more difficult to deal with in the bank surveillance, it was very significant evidence for a variety of reasons. Putting that together with a testimony of three co-conspirators, it cannot be said, if your honors decide to reach the issue of ineffective assistance, that any errors were made and certainly none that would have changed a verdict. I didn't say before when I was talking about cross-examination, but when it was necessary and when the witness hurt Mr. Wingate, there was very vigorous cross-examinations on Mr. Loving, his co-robber, Ms. Cavett, which we've already talked about, Ms. Bell and Ms. Kennedy, two of his co-conspirators. You'll see very, very extensive cross-examinations of all those witnesses who implicate Mr. Wingate. So you can see trial counsel strategy to some extent. You can also see that it was decided that Mr. Crowe was going to go first in the case of Mr. Wingate second, and when that happens, a lot of times the second counsel doesn't cover the same ground that the first counsel might have covered. And so it was just decided among counsel, apparently, to do that. Now, if there are no questions about any of Mr. Wingate's issues, I'd like to quickly move on to Mr. Crowe. Only the first, I guess, issue really remains, and that is whether there's a brutal problem. There's not a brutal problem, first of all, because there was no evidence admitted. Secondly, the statements of counsel were not testimonial. You'd have to have both of those facts. And thirdly, they did not mention Mr. Crowe in any way. And this court has held in the fourth case that even if something becomes incriminating when you put it together with other evidence, that's not good enough either for a brutal violation. So there's just not enough. You don't meet any of the elements necessary for a brutal violation. And if there are any questions, I'll answer them. If not, I will simply ask you to affirm the district court's conviction and sentence of Mr. Crowe and Mr. Wingate. Thank you. Your Honors, I have no rebuttal to make, and if I may, yield the rest of my time to the students. Yes. I'd like to address the questions that were asked with regard to the unduly significant because Ms. Cavett was influenced by that lineup, and it was certainly unduly suggestive. This court has an opportunity to recognize a parallel between beard length and hair length, and it would be bald versus clean-shaven, short hair versus a short beard, and long hair versus a long beard. And if you were to look at the lineup, I believe it's been submitted by the government, you'll see that Mr. Wingate is the only one who has a long beard, and by that alone, it's enough for it to be unduly suggestive. And it should have been something that trial counsel moved to suppress but did not move to suppress, and that suppression prejudiced the outcome and undermines the confidence that this court should have in the MediCap conviction. First, we know that Mr. Crowe was not convicted with the MediCap robbery, but Mr. Wingate was. And specifically, the reason that there is prejudice here is because Ms. Cavett's identification of Mr. Wingate when it went to the jury provided an additional credibility that the co-conspirators did not have. So the co-conspirators were cross-examined on the fact that they would have sentence recommendations from the government, and Ms. Cavett didn't have any of those credibility issues. And so when she testified that Mr. Wingate was one of the men that robbed the MediCap pharmacy, she provided testimony that was consistent with what the co-conspirators said, and that meant that the jury didn't necessarily have to make a credibility determination based on sentence recommendations in order to find that Mr. Wingate was present. And so had the court suppressed the identification, Mr. Wingate would not have had consistent testimony from a non-co-conspirator, and that's the difference that undermines the outcome with respect to that. But there are no further questions. Thank you. Thank you. Your Honors, I'd just like to briefly address the standard of review under United States v. MAC. In that case, this court said that the standard of review is whether there's reasonable doubt about whether the error would have contributed to the conviction. And so reasonable doubt for Mr. Wingate on appeal is a low standard. He only needs to demonstrate that there was doubt about whether or not there was brandishing at the MediCap pharmacy robbery. The government references Exhibit 30, the surveillance video, but, again, the government went through the surveillance video with Ms. Cavett during the trial and never once discussed brandishing. There is no testimony, no evidence in the record about brandishing. And combined with her testimony that she did not see Mr. Wingate brandish a weapon throughout the course of the robbery, that's enough to create the type of reasonable doubt that this court addressed in United States v. MAC. United States v. MAC got that standard from the Supreme Court's Nader v. United States case, which talked about overwhelming and uncontroverted evidence, which is necessary to survive harmless error review. And that type of overwhelming and uncontroverted evidence is simply absent in this case. And for that reason, we ask you to reverse the sentences for brandishing. Thank you, Your Honor. Thank you. And I want to thank the students for your argument. Your representation of your client was excellent, and we very much appreciate your taking on this case. And, Mr. Avalano, we thank you for your representation under the Criminal Justice Act. And, Mr. Chadwell, we thank you for representing the United States, so we thank you all. And this case will be submitted with the clerk recess court.